# EXHIBIT B

| | |
|---|---|
| DOCKET NO.: FST-FA-22 6056778-S | : SUPERIOR COURT |
| BRAD ZACKSON | : J. D. OF STAMFORD/NORWALK |
| VS. | : AT STAMFORD |
| JUDITH ZACKSON | : MAY 3, 2024 |

**PLAINTIFF'S MOTION FOR ORDER/MOTION TO ENJOIN THE DEFENDANT FROM PUBLISHING ANY ILLEGALLY OBTAINED INFORMATION/MOTION IN LIMINE *PENDENTE LITE***

The Plaintiff, Brad Zackson, pursuant to General Statutes § 52-184a, Practice Book § 15-3, and the relevant case law cited to in this motion, moves for an order in limine precluding the Defendant from introducing any video, audio, electronic recordings, and/or any other electronically stored information which were obtained illegally by the use of any electronic device. The Plaintiff further moves that the Defendant be enjoined from disseminating and/or publishing in any manner whatsoever, any of the above-referenced information that the Defendant has gathered illegally. The Defendant has recorded the Plaintiff without the Plaintiff's consent and has admitted to purchasing devices to surreptitiously record and/or track the movements of the Plaintiff using said electronic devices. In support of his Motion the Plaintiff submits the following.

### I.   FACTS

This dissolution of marriage action was instituted by way of summons and complaint on May 27, 2022. Between 2021 and 2022, while the parties were living in separated rooms in the marital home, the Defendant purchased and hid recording devices in the Plaintiff's bathroom and bedroom with the intention to surreptitiously record private telephone communications without the Defendant's knowledge or consent, in violation of Connecticut General Statutes § 53a-189. The parties had been residing at 343 Taconic Road, Greenwich, Connecticut from 2016 to April 2022. During the course of the breakdown of the parties' marriage in 2020, the Plaintiff moved out of

1

the marital bedroom and into another room in the marital home. While occupying this room the Plaintiff routinely locked the door to his bedroom, used a separate bathroom, and at all times therein maintained a reasonable expectation of privacy in those locations. The telephone conversations the Plaintiff had in those areas of the house during this time period were intended to be private.

On or about April 2, 2022, while in his bathroom, the Plaintiff observed a flashing light near the ceiling. Upon inspection, the Plaintiff discovered that a recording device had been hidden above the bathroom molding. The Plaintiff removed the device, and the next day inspected it with the assistance of his business associate. The Plaintiff and his business associate determined that there were at least four instances of recordings on the device dating back to November 2021, at least one of which was a phone conversation between the Plaintiff and his business associate.

Incident to this dissolution action the undersigned counsel requested and received the production of the Defendant's Amazon purchase history for the period of January 7, 2018 to November 18, 2022. A review of the Amazon purchase history showed that the Defendant had purchased surreptitious recording and tracking devices on several occasions between 2022 and 2023, totaling approximately 20 different devices. The undersigned counsel deposed the Defendant on April 4, 2023 and September 21, 2023; whereby the Defendant was examined on the topic of the surreptitious recording devices she had purchased. At her April 4, 2023 deposition, the Defendant was asked:

> Q. Have you ever recorded Mr. Zackson without his knowledge, authorization or consent?
>
> A. Yes.

Deposition Transcript p. 188 line 24 to 189 line 1, April 4, 2023

The Defendant was presented a recording at the deposition that she had produced to Plaintiff's counsel in which she was making statements directed to her sister Toby, one of those statements being "I record everything." When asked if she heard herself say "I record everything" the Defendant responded in the affirmative. *See* Deposition Transcript p. 203 lines 10-24, April 4, 2023. The Defendant was shown Plaintiff's Exhibit 10, an image of a device that she was asked to identify and testified that "[i]t's a recorder" and that she had purchased it. *See id.* at 204-05 lines 22:5. The Defendant was shown the Amazon order purchase history excel spreadsheet and asked to read certain purchase descriptions into the record. One purchase description included "Spy camera charger, hidden camera, premium pack, mini-spy camera, USB charger, hidden spy camera, hidden nanny camera, hidden spy cam." When asked if she purchased that item the Defendant replied "Yes." When asked what the device the Defendant described it as "a hidden camera." *See id.* at 209 lines 5:6.

The Defendant was asked the following on pages 209 to 210 of the April 4, 2023 deposition transcript:

```
Q. What was that device

A. It was a hidden camera.
Q. Describe what it looked like.

A. I don't remember.

Q. Try harder.

A. Okay. I don't – I mean, are you asking – I don't
   know, when you say describe it, in what way you're
   looking for me to describe it?

Q. What did it look like?
```

3

A. It looked like a box, like a small box, like a small square, maybe, I think.

Q. Like the butt for your charger for your iPhone, correct?

A. Yeah, I think so, yeah.
Q. Was it white?

A. I don't remember the color.

Q. And where did you place that hidden spy camera – USB charger?

A. In my room.

Q. Only in your room?

A. I placed one in Brad's room.

Q. When?

A. I don't remember the date.

Q. In Greenwich?

A. Yes.

Q. And for what purpose did you place a hidden spy camera in Brad's room?

A. For what purpose?

Q. Yes.

A. To hear what he says.

The Defendant was further asked questions about the specific device she had identified as a "recorder" in Plaintiff's Exhibit 10.

4

> Q. Before. Line entry 283 and 84. Additional purchases here on your Amazon account, paid by your American Express card, and there's the "TileRec slimmest voice activated recorder with 145 hours recording capacity, MP3 records, 24 hours battery time, metal case by Atto Digital." Take a look at Plaintiff's Exhibit 10. Is that device that's referenced on line 283 of this Excel spreadsheet, the same device as referenced in Plaintiff's Exhibit 10? If you look at the – the actual device itself, it says "Atto Digital voice recorder." Do you see that?
>
> A. Here?
>
> Q. Yes.
>
> A. Yea, A-T-T-O.
>
> Q. Model TileRec. Do you see that? On Exhibit 10.
>
> A. Yeah.
>
> Q. Okay. Do you know whether or not the entry on line 283 on your spreadsheet from your Amazon purchases, that was made on February 6, 2022, is the same device as reflected in Plaintiff's Exhibit 10 here?
>
> A. I think so, but I'm not certain.
>
> Q. All right. So fair to say that you placed this device in Mr. Zackson's room somewhere after February 6, 2022. Correct?
>
> A. Yeah.

*See id.* at 219 line 19 to 220 line 21.

The Defendant was presented with the statutory text of the crimes of Voyeurism, Connecticut General Statutes § 53a-189a and Eavesdropping, § 53a-189. The Defendant was then asked whether the recording device, as reflected in Plaintiff's Exhibit 10, was a mechanical device which overheard the conversations of the Plaintiff in his room to which she answered, "Yes."

## II.   LAW

### A.  Legal Standard

This Court has the authority to limit a party's ability to disclose sensitive information relative to a custody proceeding. *See generally, In re Brianna B.*, 66 Conn. App. 695 (2001). In *Brianna B.*, the Appellate Court concluded "that the court properly limited the first amendment rights of the petitioner to disclose information obtained during the course of a custody proceeding. The right to disclose information is not without limit and may be limited by legitimate privacy interests. *See Seattle Times Co. v. Rhinehart*, supra, 467 U.S. at 34–35, 104 S. Ct. 2199. The court must 'make its own inquiry into the imminence and magnitude of the danger said to flow from the particular utterance and then to balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression. The possibility that other measures will serve the State's interests should also be weighed.' *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 843, 98 S. Ct. 1535, 56 L.Ed.2d 1 (1978)." *In re Brianna B.*, 66 Conn. App. 695, 702, 785 (2001).

The purpose of a motion in limine is to exclude irrelevant, inadmissible and prejudicial evidence from trial. *State v. Lo Sacco*, 26 Conn. App. 439, 444 (1992). Practice Book § 15-3 provides in relevant part:

> The judicial authority to whom a case has been assigned for trial may in its discretion entertain a motion in limine made by any party regarding the admission or exclusion of anticipated evidence. . . . Such motion shall be in writing and shall describe the anticipated evidence and the prejudice which may result therefrom. . . . The judicial authority may grant the relief sought in the motion or such other relief

6

as it may deem appropriate, may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding.

The motion in limine has generally been used in Connecticut courts to invoke a trial judge's inherent discretionary powers to control proceedings, exclude evidence, and prevent occurrences that might unnecessarily prejudice the right of any party to a fair trial. C. Tait & J. LaPlante, Connecticut Evidence (2001) § 1.34.1, p. 98; *Richmond v. Longo*, 27 Conn. App. 30, 36, cert. denied, 222 Conn. 902 (1992). See e.g., *Ambrogio v. Beaver Road Associates*, 267 Conn. 148, 160 (2003). The motion in limine may, of course, be used to preclude evidence obtained illegally. *State v. Smith*, 40 Conn. App. 789, 796, cert. denied, 237 Conn. 915, cert. denied, 519 U.S. 783 (1996).

B. Illegally Obtained Recordings are Inadmissible in Civil Actions

General Statutes § 52-184a states that, "[n]o evidence obtained illegally by the use of any electronic device is admissible in any court of this state." Pursuant to General Statutes § 53a-189, a person is guilty of eavesdropping, a class D felony, when he "unlawfully engages in wiretapping or mechanical overhearing of a conversation." *See* Connecticut General Statutes 53a-189 (a) and (b). As defined by General Statutes § 53a 187(a)(2), "[m]echanical overhearing of a conversation" means "the intentional overhearing or recording of a conversation or discussion, without the consent of at least one party thereto, by a person not present thereat, by means of any instrument, device or equipment." As further defined by General Statutes § 53a-187(a)(3), "[u]nlawfully" means "not specifically authorized by law."

General Statutes § 53a-189a, Voyeurism, states that "[a] person is guilty of voyeurism when, (1) with malice, such person knowingly photographs, films, videotapes or otherwise records the image of another person (A) without the knowledge and consent of such other person, (B) while

7

NYSCEF DOC. NO. 50	Case 1:24-cv-04649-LAK   Document 15-3   Filed 06/29/24   Page 9 of 13	RECEIVED NYSCEF: 06/12/2024

such other person is not in plain view, and (C) under circumstances where such other person has a reasonable expection of privacy."

"[T]he eavesdropping statutes are intended to address surreptitious overhearing or recording of a . . . communication and that their reach was intended to be limit[ed] . . . to situations in which the speakers had no reason to know that they could or might be overheard." *Washington v. Meachum*, 238 Conn. 692, 711 (1996).

"The world illegal can be interpreted according to its common meaning and usage; specifically, 'illegal' means 'against or not authorized by law.' Black's Law Dictionary (5th Ed.). This is the same definition as 'unlawfully' contained in § 53a-187(a)(3) reference above." *Simonson* v. *Simonson*, Superior Court, Judicial District of Stamford-Norwalk, D.N. FA15- 6025703-S, 2016 WL 2728245 at *2, 62 Conn. L. Rptr. 156 (*Colin, J.*, April 15, 2016).

In *Finerty v. Finerty*, Superior Court, judicial district of Fairfield, Docket No. FA–92–0294678–S (Nov. 24, 1992; Bassick J.) (8 Conn. L. Rptr. 28), the court granted a protective order to preclude further deposition inquiry based on illegally intercepted and recorded telephone conversations, where the movant claimed that evidence derived from recordings was inadmissible as fruit from the poisoned tree.

In *Barr v. Barr*, No. FSTFA134025428S, 2015 WL 2166633, at *4 (Conn. Super. Ct. Apr. 9, 2015) the Court granted the defendant's motion for protective order relative to documents obtained from the defendant's email accounts without his permission, citing to Practice Book § 1–8. In addition, the court found the federal court's decision in *In re Shell Oil Refinery*, 143 F.R.D. 105, "in which the court precluded the opposing counsel's use of the defendant's documents that were allegedly obtained outside of normal discovery channels", to be "particularly instructive". *Id*. at *3.

8

In *Simonson v. Simonson*, No. FA156025703S, 2016 WL 2728245, at *4 (Conn. Super. Ct. Apr. 15, 2016) (*Colin, J.*, April 15, 2016), this Court stated in pertinent part: "A party who has obtained evidence in an illegal manner should not be permitted to benefit from that misconduct by still being able to use that evidence in court." There, this Court ordered: "1. The defendant shall be prohibited from any use of his illegal recording of the plaintiff in the discovery process, including but not limited to the deposition of Jeffrey; 2. The defendant shall be prohibited from any use of his illegal recording of the plaintiff at trial..."

In *Craw v. Craw*, FST-FA-20-6049415-S, the Court (Truglia, J.) held that recordings obtained in violation of General Statues § 53a-189 were obtained illegally by an electronic device and that pursuant to § 52-184a, the recordings were inadmissible in court. The Court distinguished the case from *Robinson v. Robinson*, 39 Conn. L. Rptr. 56, in that the defendant had not exercised "good faith" in the furtherance of discovery, but rather, self-help. *See Craw*, at 11. (citing to *I.K. v. M.K.*, 194 Misc. 2d 610 (ruling that defendant's decision to secretly record conversations was inextricably intertwined with his self-interest in obtaining evidence for the purpose of litigation)). The Court (Truglia, J.) found in *Craw*, that "the defendant's proposed use of the illegally captured recordings, *at any stage of this litigation*, would produce a fundamental inequity between the parties." *Craw*, supra, at 11. Reasoning that "[t]o permit further use of the recordings would not only constitute a continuing violation of that plaintiff's privacy, but would also facilitate further harassment and abuse." *Id.* "Moreover, allowing illegally obtained evidence to be used in even limited ways will only encourage litigants to find ever-more creative and deceptive forms of eavesdropping and surveillance." *Id.* at 13. The Court prohibited the defendant from using any of the illegal recordings at any evidentiary hearing, from eliciting any testimony that is based upon the illegal recordings, and from using any of the illegal recordings at any stage of the discovery

9

process, including, but not limited too, depositions of the plaintiff, the guardian ad litem, and third parties. *See id.*

### III. ARGUMENT

The Defendant admitted under oath that she recorded the Plaintiff using the aid of surreptitious recording devices that she purchased off of Amazon. The Defendant did so without the Plaintiff's knowledge or consent in violation of the eavesdropping and voyeurism statutes. The Defendant's illegal acts were done to gain leverage and advance her position in the now pending divorce action. As such, the Defendant's illegal acts must not be rewarded by allowing her to utilize the information illegally gathered in any aspect of the divorce litigation.

The Defendant specifically identified that the recording device found by the Plaintiff in the Plaintiff's bathroom, where he had a reasonable expectation of privacy, was a device that she bought that is reflected in her Amazon purchase history. The Defendant admitted to purchasing many devices intended to record, track or otherwise monitor, and it is unknown to the Plaintiff whether the Defendant has retained any information illegally obtained from said devices.

The Defendant testified to purchasing surreptitious video recording devices designed to imitate an iPhone charging block and placed said device in the Plaintiff's separately occupied room for the purpose of recording the Plaintiff. The Plaintiff had a reasonable expectation of privacy in the bedroom and bathroom that he separately moved into in the home, which was not in plain view as the Plaintiff routinely locked the doors. The Defendant has repeatedly taken action to harm the Plaintiff throughout the course of this litigation and her attempts to surreptitiously record the Plaintiff are no different. The Defendant acted with malice in trying to gather information against the Plaintiff to advance her position in this dissolution action.

WHEREFORE, the Plaintiff respectfully requests that the Court order that:

A. The Defendant be enjoined from disseminating and/or publishing any of the illegal recordings and/or any illegally gathered information in any manner whatsoever;

B. The Defendant be prohibited from any use of the illegal recordings and/or any illegally gathered information at any evidentiary hearing in this matter, including the preclusion of any use of that recording in evidence or testimony;

C. The Defendant be prohibited from eliciting any testimony that is based on the illegal recordings and/or any illegally gathered information;

D. The Defendant be prohibited from any use of the illegal recordings and/or any illegally gathered information in the discovery process, including but not limited to the depositions of the Plaintiff, the Guardian *ad Litem*, and third parties;

E. The Defendant shall pay the Plaintiff's reasonable counsel fees and costs related to the preparation and prosecution of this Motion; and

F. Such other and further relief as the Court deems fair and equitable under the circumstances.

                                THE PLAINTIFF
                                BRAD ZACKSON

By: _____
     Michael T. Meehan
     Richard J. Meehan
     Meehanlaw, LLC
     76 Lyon Terrace
     Bridgeport, CT 06604
     Juris # 101342
     Tel: (203) 333-1888
     Facsimile: (203) 331-0107
     mtm@meehanlaw.com

## **CERTIFICATION**

This is to certify that the foregoing has been delivered electronically on this 3rd day of May 2024 to the following counsel and self-represented parties of record:

Dori-Ellen Feltman, Esq.
246 Post Road East
Westport, CT 06880
Doriellen@ctnyfamilylaw.com

Jocelyn B. Hurwitz
Cohen and Wolf, PC
1115 Broad Street
Bridgeport, CT  06604
JHurwitz@cohenandwolf.com

_____
Commissioner of the Superior Court

12